IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

HEATHER HOGROBROOKS HARRIS,

        Plaintiff,

   vs.

                                No.    18-2400-JPM-dkv

WELLS FARGO BANK, N.A.,

        Defendant.
_____

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL
FOR LACK OF STANDING
AND
REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS
_____

On June 11, 2018, the plaintiff, Heather Hogrobrooks Harris ("Harris"), filed a twenty-three (23) page type-written *pro se* complaint, which also included fifteen (15) pages of exhibits, against the defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), in the United States District Court for the Western District of Tennessee. (Compl., ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Harris's complaint alleges claims under 42 U.S.C. §§ 1981,

1982, and 1985(3), as well as state law claims for "Breach of an Unconscionable Contract," detrimental reliance, fraudulent misrepresentation, and violations of Tennessee consumer protection statutes. (Compl. 14-21, ECF No. 1.) After receiving permission from the court to extend the time for filing a responsive pleading, (ECF No. 18), Wells Fargo filed an answer on September 14, 2018, (ECF No. 22). The court then conducted a Rule 16 scheduling conference during which the undersigned magistrate judge *sua sponte* raised the issue of standing and subject matter jurisdiction, requested briefs from the parties on these issues, and set a briefing deadline of December 7, 2018. (Sched. Order 1-2, ECF No. 34.) Wells Fargo entered its brief on standing and jurisdiction on December 7, 2018. (Def.'s Br., ECF No. 40). Harris, on the other hand, did not file anything regarding the requested briefing until December 14, 2018, after the time for briefing had expired. (Pl.'s Br., ECF No. 43 & Pl.'s Supp. Br., ECF No. 44.)

On January 3, 2019, Wells Fargo filed a motion for judgment on the pleadings asking that the court enter judgment in its favor because Harris's complaint "fails to plead sufficient factual matter to render any of her claims plausible." (Mot. for J. on the Plead. 1, ECF No. 51.) Harris filed a response in opposition on January 7, 2019, (Pl.'s Resp. in Opp., ECF No. 53), to which Wells Fargo replied, (Def.'s Reply, ECF No. 58).

Harris, without leave of court, filed a sur-reply on January 28, 2019. (Pl.'s Sur-Reply, ECF No. 60.)

For the reasons that follow, it is recommended that Harris's complaint be dismissed *sua sponte* in its entirety for lack of standing. In the alternative, it is recommended that Wells Fargo's motion for judgment on the pleadings be granted.

## I.    PROPOSED FINDINGS OF FACT

This case arises out of Harris's attempts to assume the mortgage of her late husband, Jimmy D. Harris, following his death in March of 2015, and to obtain a mortgage modification from Wells Fargo. (Compl. 1, ECF No. 1.)    The late Mr. Harris was the sole mortgagor and owner of the property at issue – 579 Byron Drive Memphis, Tennessee 38109. (*Id.* at ¶ 1.)  In 2005, when Mr. Harris took out a mortgage on the property, the appraised property value was $120,000. (*Id.* at ¶ 11.)  Mr. Harris's 2005 mortgage loan was approximately $98,000. (*Id.*) The most recent appraisal of the property, done in 2018 by the County Assessor, values the property at $90,000. (*Id.*)  As of the time of the filing of this suit, the balance due on the mortgage was approximately $48,000. (*Id.*)

In 2013, Mr. Harris was diagnosed with lung cancer. (*Id.* at ¶ 5.)  Harris alleges that she contacted Wells Fargo on her husband's behalf in September 2014, in order to obtain an application to participate in the Home Affordable Modification

3

Program ("HAMP") in an attempt to lower the mortgage payments due to her husband's failing health. (*Id.* at ¶¶ 5-6.) Harris alleges that Wells Fargo agreed to send a HAMP application. (*Id.* at ¶ 6.) On October 26, 2014, Mr. Harris mailed Wells Fargo a power of attorney document, which allowed Harris to discuss the mortgage and execute documents on his behalf. (*Id.* at ¶¶ 6-7.) Harris claims that throughout December 2014, she made four or five calls to Wells Fargo, but never received a refinancing packet. (*Id.* at ¶ 7.)

Mr. Harris died on March 10, 2015. (*Id.*) From what the court can glean from the complaint, Mr. Harris had a will which left the real property to Harris. (*Id.* at ¶ 8.) In lieu of probating the will, on May 19, 2015, Harris recorded an Affidavit of Heirship with the Register of Deeds "to have her inherited property officially registered and placed in her name." (*Id.* at ¶ 10.)

Harris continued to pay Mr. Harris's mortgage from his death through June of 2015, but she claims she "could not continue as her reserve resources had dwindled significantly . . . ." (*Id.* at ¶ 9.) Harris alleges that during the first three months after Mr. Harris's death, she requested copies of all mortgage documents, but did not receive all requested documents, (*id.*), and that she requested HAMP applications, (*id.* at ¶ 12). She claims that she sent Wells Fargo copies of her marriage

4

license, Mr. Harris's death certificate, and her Affidavit of
Heirship, asking that Wells Fargo send her documents regarding
the mortgage. (*Id.*) Harris claims to have dealt with fifteen
or more employees of Wells Fargo in trying to modify the
mortgage on the property. (*Id.* at ¶ 13.)

In October 2015, Harris received a notice of foreclosure.
(*Id.* at ¶ 14.) Harris alleges that after contacting the
foreclosure firm listed on the notice, she finally received her
first HAMP application, which "she promptly filled out and
returned." (*Id.* at ¶ 15.) In December 2015, however, Harris
received a second notice of foreclosure. (*Id.* at ¶ 16.) Harris
alleges that a Wells Fargo representative informed her that the
Affidavit of Heirship was insufficient to vest her with a
property interest in Mr. Harris's property. (*Id.* at ¶ 17.) The
Wells Fargo representative purportedly informed Harris that the
"only way she could stop the foreclosure sale" was to open an
estate in probate court and submit Mr. Harris's will to probate
and provide Wells Fargo with letters testamentary, "at which
time they would modify the loan." (*Id.* at ¶ 19.) Harris opened
an estate in probate court but the probate court refused to
admit the will to probate. An appeal of the probate court's
ruling was pending before the Tennessee Court of Appeals at the

time Harris filed this lawsuit.[1] (*Id.* at ¶ 20.)

Upon filing the will for probate, Harris was named the administrator of Mr. Harris's estate, (*id.* at ¶ 24), and provided letters testamentary, which she sent to Wells Fargo, (*id.* at ¶ 23). Harris received another foreclosure notice. (*Id.* at ¶ 23.) Harris, "absolutely devastated by [Wells Fargo] scheduling another foreclosure sale," withdrew as the administrator of the estate and appealed the probate court's decision denying probate of the will. (*Id.* at ¶ 24.) She alleges that Wells Fargo continued sending notices of foreclosure to Harris's address, despite "[knowing] the name and addresses of the attorney and the two other people mentioned in the will," (*id.* at ¶ 27), and has still continued sending mail to Harris as the representative of the estate "even though [Harris] has not held that title since June of 2016 and [Wells Fargo] knows there is and has been no Estate representative since," (*id.* at ¶ 28).

Thereafter, Harris sent in another HAMP application, but received notices back from Wells Fargo stating that she was missing documents. (*Id.* at ¶ 29.) Harris purportedly responded

---

[1]On December 10, 2018, the Tennessee Court of Appeals reversed the judgment of the Probate Court of Shelby County concerning the admission of the will and remanded the matter back to the probate court. *In re Harris*, No. W2016-01768-COA-r3-CV, 2018 WL 6444136 (Ct. App. Tenn. Dec. 10, 2018). As of the date of this order, the probate court has neither granted nor denied probate of Mr. Harris's will.

to those notifications, sending in the proper documents, but still received another notice of foreclosure. (*Id.*) In January of 2017, Harris filed for bankruptcy, (*id.* at ¶ 30), which she claims was because Wells Fargo refused to allow her to modify Mr. Harris's mortgage, (*id.* at 1).

Harris further alleges that in April of 2017 Wells Fargo allowed her to make "trial payments" totaling roughly 40% of her monthly income. (*Id.* at ¶ 31.) Although she paid these trial payments from May of 2017 through February 2018, Harris claims that Wells Fargo then called to inform her that she could not assume the loan until the probate matter was closed. (*Id.* at ¶ 35.) Wells Fargo purportedly returned all but one of her trial payments and Harris believes Wells Fargo wrongfully failed to pay her interest for the payments it held. (*Id.* at ¶ 32.)

Harris alleges that she repeatedly – "about five times starting in November 2017" – returned the documents requested by Wells Fargo, but Wells Fargo "will not explain[] why [it] won't accept the document sent in compliance with their request and conformity with its form." (*Id.* at ¶¶ 37–38.) Harris, "simply spent at this point," filed a complaint with the Consumer Financial Protection Bureau on December 27, 2017. (*Id.* at ¶ 39.) After Wells Fargo responded to Harris's Consumer Financial Protection Bureau complaint, Harris asserts that she received a "Notice of Action Taken and Statement of Reasons" informing her

7

that the assumption could not be granted because the loan was not assumable "without any explanation of why". (*Id.* at ¶¶ 33, 40; Ex. H, ECF No. 1-8.)   Harris surmises that this rejection "[was] for retaliation," and "to cover up" Wells Fargo's unjust treatment of Harris, and to "unjustly enrich itself with the equity in the property." (*Id.* at 1, ¶¶ 40, 42.)

On January 18, 2018, Harris alleges that she received a call from a Wells Fargo representative, who informed her that the mortgage modification could not be completed because Harris "did not have a vested interest in the property . . . until [the court entered] an order closing the probate and an order from that court proclaiming [Harris] as the sole owner of the property" because there were two other heirs mentioned in the will, and apparently, Wells Fargo had reservations as to the true owner of the property. (*Id.* at ¶ 40.)

Harris believes that Wells Fargo engaged in discriminatory lending practices by imposing requirements upon her for which "it will not offer her a reason[,] and which cannot be discerned from the documents it sends or program rules available to [her]." (*Id.* at ¶ 43.)   She also asserts that, at the time the 2005 mortgage was entered into, Mr. Harris received "less favorable terms that his then credit rating, income[,] and full VA eligibility should have earned because of Wells Fargo's race based lending practices." (*Id.* at ¶ 44.)

Based on the foregoing facts, Harris alleges claims under 42 U.S.C. §§ 1981, 1982, and 1985(3), as well as state law claims for "Breach of an Unconscionable Contract," detrimental reliance, fraudulent misrepresentation, and violations of the Tennessee consumer protection statutes. (*Id.* at 14-21.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standing

Lack of standing implicates the case-or-controversy requirement of Article III, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and, therefore, is a threshold issue in every federal case. *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469-70 (6th Cir. 2007). "When Article III standing is at issue, the plaintiff must allege facts sufficient to establish the requisite individualized harm." *Griffin v. Bank of Am., N.A.*, 226 F. Supp. 3d 899, 901 (N.D. Ohio 2016)(citing *Keener v. Nat'l Nurses Org. Comm.*, 615 F. App'x 246, 251 (6th Cir. 2015)). Specifically, to establish standing, a plaintiff must allege (1) a concrete and particularized injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560-61. If a plaintiff cannot establish the requirements for standing, the court must dismiss the claim. *Patel v. Hughes*, No. 3:13-0701, 2014 WL 4655285, at *4 (M.D. Tenn. Sept. 16, 2014). "It

9

is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

In its "Brief on Subject Matter Jurisdiction and Plaintiff's Standing," Wells Fargo argues that Harris does not have standing to bring her claims because she was neither a party to the deed of trust, nor an intended beneficiary of the mortgage contract. (Def.'s Br. on Standing 7-10, ECF No. 40.) Harris filed two separate "Response[s] to the Issue of her Standing," neither of which discuss the court's requested briefing on subject-matter jurisdiction and standing. (Pl.'s Br., ECF No. 43 & Pl.'s Supp. Br., ECF No. 44.) Instead, her responses continue to plead her case, criticize Wells Fargo's brief and actions with regard to this case, and complain about the court's handling of this case. (*See* Pl.'s Br., ECF No. 43 & Pl.'s Supp. Br., ECF No. 44.)

Federal law specifies that cases in courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. Section 1654 provides that, "[i]n all courts of the United States, the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." The federal courts have long held that

10

§ 1654 preserves a party's right to proceed *pro se*, but only on his own claims. *Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (6th Cir. 1969); *accord Shepherd v. Wellman,* 313 F.3d 963, 970–71 (6th Cir.2003)(*pro se* party may not prosecute a wrongful death action on behalf of other beneficiaries).

An estate is represented by a lawfully appointed executor or administrator. Harris does not allege that she is the appointed representative of her late husband's estate, and therefore the court presumes that she is not. *Davis*, 2013 WL 4446240, at *5 ("The complaint does not allege that [plaintiff] is her son's personal representative, and therefore the court assumes that [plaintiff] is not acting in a representative capacity for her son's estate."). In fact, Harris pleads the exact opposite. Harris's complaint alleges that she "withdrew as the administrator of the estate" after being "absolutely devastated by [Wells Fargo] scheduling another foreclosure sale for her property" while her late husband's will was submitted to probate. (Compl. ¶ 24, ECF No. 1.) She claims that "[she] has not held that title since June of 2016 and . . . there is and has been no Estate representative since." (*Id.* at § 28.) Therefore, Harris cannot establish that she is the administrator of the estate for the purposes of establishing standing. Because

11

Harris is not the administrator of her late husband's estate, she cannot bring claims against Wells Fargo on behalf of his estate.

Even if Harris were the administrator of her late husband's estate, "an executor of an estate may not appear *pro se* when the estate has beneficiaries and creditors other than the litigant." *Matthews*, 2014 WL 3049906, at *5 (quoting *Shepherd*, 313 F.3d at 970). Here, Harris's complaint sets forth that her late husband's estate has multiple heirs: (1) Harris, (2) Mr. Harris's adult son, and (3) "another [person] that [Mr. Harris] accepted as his son since his high school days." (Compl. ¶ 8, ECF No. 1.)[2] Harris should not be allowed to proceed *pro se* in this instance where "interests other than [her] own are at stake." *Shepherd*, 313 F.3d at 970. Accordingly, Harris lacks standing to proceed on the estate's behalf.

Finally, to the extent that Harris is asserting claims related to the mortgage contract between Wells Fargo and Mr. Harris, Harris has no standing to assert them. *See Coleman v. Indymac Venture, LLC*, 966 F. Supp. 2d 759, 770 (W.D. Tenn. 2013)(holding that the plaintiff has no standing to sue as a borrower/debtor under the Deed of Trust where another person is

---

[2] In "Response [to] Defendant's Brief on Subject Matter Jurisdiction and Plaintiff's Standing," Harris also states that her late husband also had a "forty something daughter" at the time of his passing. (Pl.'s Br. ¶ 3, ECF No. 43.)

the only borrower listed under that agreement); *see also Ivey v. Wells Fargo Home Mortg.*, No. 15-2259-STA-cgc, 2015 WL 12826638, at *2 (W.D. Tenn. Sept. 28, 2015)(holding that the "[p]laintiff lacks standing to bring any claims for breach of the deed of trust between [borrower] and [lender]); *Dey El ex rel Ellis v. First Tennessee Bank*, No. 13-2449-JDT-dkv, 2013 WL 6092849, at *11 (W.D. Tenn. Nov. 18, 2013)(holding "[t]o the extent that [plaintiff's] claims arise out of the loan transaction between [debtor] and [lender], he lacks standing to pursue such claims because he was not a party to the transaction"). Harris alleges that Mr. Harris entered into a contractual relationship with Wells Fargo in 2005 concerning the mortgage of his property; however, Harris does not allege that she was a party to this agreement. (Compl. ¶ 1, ECF No. 1.) Generally, Tennessee law presumes that contracts are "executed for the benefit of the parties thereto and not third persons." *Owner-Operator Indep. Drivers Assoc., Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001); *Ward v. Glover*, 206 S.W.3d 17, 33 (Tenn. Ct. App. 2006). Non-parties to a contract have no standing to sue for its enforcement, except under circumstances that are not present in this case.[3] *Concord EFS, Inc.*, 59 S.W.3d at 68 (holding that

---

[3] Only intended beneficiaries, not incidental beneficiaries, may maintain an action for breach of contract. *Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 56 (Tenn. Ct. App. 2006). To establish that a plaintiff is an intended

non-parties to a contract lacked standing unless they could show that they were intended third-party beneficiaries of the contract). Because Harris was not a party to the mortgage contract between Mr. Harris and Wells Fargo and because she was not an intended beneficiary of that mortgage contract, Harris the requisite causal connection does not exist between Wells Fargo's refusal to modify her late husband's deed of trust and the injury presented by a potential foreclosure. *Lujan*, 504 U.S. at 560-61.

Therefore, Harris lacks standing to state claims with relation to the contract between Mr. Harris and Wells Fargo. Accordingly, it is recommended that Harris's complaint be

---

beneficiary to an agreement, she must establish:

> (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party. *United American Bank of Memphis v. Gardner*, 706 S.W.2d 639, 641 (Tenn. App. 1985). Intent to benefit may be shown "if there is either an expression in the contract that the contracting parties intended to benefit the third party (the 'intent to benefit' test) or proof that the promisor's performance would otherwise discharge a duty owed to a third party beneficiary by the promise (the 'duty owed' test). *Moore Construction Co. v. Clarksville Dep't of Electricity*, 707 S.W.2d 1, 9 (Tenn. App. 1985)(citing Restatement (Second) of Contracts § 302 (1979))].

Harris has failed to plead any facts here to suggest that she was an intended beneficiary of the 2005 mortgage contract. Thus, she has failed to establish that she has standing to maintain an action for breach of contract.

14

dismissed *sua sponte* in its entirety for lack of standing.

B.    Wells Fargo's Motion for Judgment on the Pleadings

Also before the court is Wells Fargo's January 3, 2019 motion for judgment on the pleadings. (Mot. for J. on the Pleadings, ECF No. 51.) Harris filed a response in opposition on January 7, 2019, (Pl.'s Resp., ECF No. 53), and Wells Fargo filed a reply on January 22, 2019, (Def.'s Reply, ECF No. 58).[4]

1.    *Standard of Review*

In deciding a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the court applies the standards under Rule 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *See Lindsay v. Yates*, 498 F.3d 434, 437 (6th Cir. 2007)("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same.") To survive a Rule 12(b)(6) motion to dismiss following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[4]Harris filed a sur-reply without permission of the court on January 28, 2019 entitled "Plaintiff's Response to Defendant Wells Fargo Bank, N.A.'s Reply Brief in Further Support of its Motion for Judgment on the Pleadings." (Pl.'s Sur-Reply. (ECF No. 60.) The Local Rules only provide for a motion, a response, and a reply, and neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a sur-reply. (Local Rule 7.2(c)).    In this case, the court has neither requested a sur-reply from Harris nor granted a request on behalf of Harris to file one.    Therefore, Harris's sur-reply is disregarded.

plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Further, the courts are not required to act as counsel for a *pro se* litigant; nor are they required to sort through the pleadings to create a claim on behalf of the plaintiff. *Pliler v. Ford*, 542 U.S. 225, 231 (2004)("[D]istrict judges have no obligation to act as counsel or paralegal to pro se litigants."); *Brown v.*

16

*Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted).   Requiring the court "to ferret out the strongest cause of action on behalf of pro se litigants . . . would transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011).   "While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Id.*

   2.   *Harris's Federal Claims*

      a.   42 U.S.C. § 1985(3)

   In a paragraph titled "42 U.S.C. § 1985(3)," Harris alleges the following:

> [Wells Fargo] caused the county sheriff on many occasions to place [Harris's] residence for sale, coerced [her] to take actions in state courts in attempt to save her home, denied her the application of state and federal regulations and public policy edicts specifically enacted to protect her against the loss of her home[,] and ultimately denied her modification and assumption attempts . . . without any explanation.

(Compl. ¶ 45, ECF No. 1.)   Harris alleges that this constitutes a violation of 42 U.S.C. § 1985(3).   (*Id.*)   In its motion for judgment on the pleadings, Wells Fargo argues that Harris has failed to plead sufficient facts indicating that Wells Fargo has

engaged in any racially discriminatory treatment of Harris.
(Mot. for J. on the Pleadings 6, ECF No. 51-1.) Wells Fargo
also argues that, even if Harris could plead racial animus, her
claim under § 1985(3) must fail because Wells Fargo cannot
conspire with itself. (*Id.* at 9.) Harris's response in
opposition fails to address Wells Fargo's arguments regarding
her § 1985(3) claim. (Pl.'s Resp., ECF No. 53.)

To state a cause of action under 42 U.S.C. § 1985(3), a
complaint must allege:

> that the defendants did (1) conspire or go in disguise
> on the highway or on the premises of another (2) for
> the purpose of depriving, either directly or
> indirectly, any person or class of persons the
> equal protection of the laws, or of equal privileges
> and immunities under the laws. . . . (3) [one or more
> of the conspirators] did, or caused to be done, any
> act in furtherance of the object of the conspiracy,
> whereby another was (4a) injured in his person or
> property or (4b) deprived of having and exercising any
> right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)(internal
quotation marks omitted). Conspiracy claims under § 1985(3) do
not apply to "all tortious, conspiratorial interferences with
the rights of others;" rather, there must be some "class-based,
invidiously discriminatory animus behind the conspirators'
action." *Taylor v. Brighton Corp.*, 616 F.2d 256, 264–67 (6th
Cir. 1980)(citing *Griffin*, 403 U.S. at 102); *see also Ctr. for
Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807,
832 (6th Cir. 2007); *Dallas v. Holmes*, 137 F. App'x 746, 752–53

(6th Cir. 2005); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984).

Here, Harris conclusorily states many times throughout her complaint that Wells Fargo was discriminating against her but fails to plead any facts concerning class-based discriminatory animus required to sustain a claim under § 1985(3). In her complaint, Harris merely speculates that Wells Fargo's actions were taken as the result of class-based discrimination: (1) "it is public knowledge and in the public record that Wells Fargo has a history of racial discriminatory lending practices", (Compl. ¶ 43, ECF No. 1); (2) because Wells Fargo has not allowed Harris to assume and modify the mortgage, "it is very plausible and reasonable that [Wells Fargo] is continuing its discriminatory practices," (*id.*); (3) Harris "is black as was the mortgagor and the home is in a predominately black neighborhood," and this led to Mr. Harris receiving less favorable terms[5] "because of Wells Fargo's race based lending practices," (*id.* at ¶ 44); and (4) Harris claims that she is the same race as Mr. Harris, "identified by class in previous litigation[6] against [Wells Fargo] as a person that received

---

[5]To the extent that Harris is attempting to make claims on behalf of Mr. Harris because he received "less favorable terms" regarding his mortgage, she has no standing to assert claims on his behalf, *pro se*. *See supra* Section II.A.

[6]This previous litigation referred to by Harris, however,

discriminatory terms in its extension of mortgages" and her home "is located in a zip code identified by the U.S. Department of Treasury's Hardest Hit Fund and identified in the City's and County's discriminatory litigation against [Wells Fargo]," (*id.* at ¶ 1(c)). Harris admits that she does not specifically fall within the purview of § 1985(3):

> Plaintiff does not invoke [the federal statutes] because of a technical application because she is of the race of people for whom this legislation was originally design (sic) to protect but because the defendant whose existence has endured through most of the history of the United States chose to make money on the backs of black people just wanting the same life as white people.

(*Id.* at 14.)  Harris's contentions, however, are nothing more than conclusory allegations of racial discrimination and her speculations about such discriminatory intent is not enough to support her claims.  She has pled no factual allegations sufficient to state a claim against Wells Fargo under § 1985. Harris's hypotheses of the reasons for the denial of her attempts to assume and modify the mortgage, without more, are simply not enough to state a claim under § 1985 with regard to its requirement of a class-based discriminatory animus. Therefore, construed liberally, Harris's complaint does not allege a class-based discriminatory animus on the part of Wells Fargo.  Furthermore, Harris does not attempt to argue otherwise

---

has remained unidentified throughout the pendency of this suit.

in her response to Wells Fargo's motion for judgment on the pleadings.

Moreover, even if Harris properly pled discriminatory animus, her complaint still fails to state a claim. The plaintiff in a § 1985(3) suit must prove the existence of a conspiracy among "two or more persons." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). It is well-settled in the Sixth Circuit that a corporation cannot conspire with its own agents or employees. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008)(holding that the plaintiff's § 1985 claim was barred by the intra-corporate conspiracy doctrine where the all of the individual defendants were acting as a collective entity"); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)("[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."); *Irons v. City of Bolivar*, 897 F. Supp. 2d 665, 669 (W.D. Tenn. 2012)(citing to *Cox v. Crowe*, 2009 WL 1562606, at *2 (E.D. Ky. June 3, 2009)). The "intra-corporate conspiracy" doctrine makes clear that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull*,

21

926 F.2d at 509 ("[I]f all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.").

Here, Harris has failed to plead the facts necessary to show that Wells Fargo and its agents and representatives acted as separate entities sufficient to form a conspiracy under § 1985(3). While she alleges that Wells Fargo unlawfully damaged her in contravention of § 1985(3), (Compl. ¶ 45, ECF No. 1), Harris has not properly pled that two or more persons or entities have conspired to deprive her equal protection of the laws. Harris has identified only one alleged conspirator here – Wells Fargo. Because a corporation cannot conspire with itself, Harris has failed to prove that there existed the requisite number of entities involved to form a conspiracy.

Without such allegations, Wells Fargo cannot incur liability to Harris under 42 U.S.C. § 1985(3). Accordingly, it is recommended that Harris's § 1985(3) claim be dismissed for failure to state a claim.

### b.   42 U.S.C. §§ 1981 and 1982

Harris alleges in her complaint that Wells Fargo violated 42 U.S.C. §§ 1981 and 1982 by refusing, without reason, to allow her to assume Mr. Harris's mortgage and modify it. (Compl. ¶¶ 46, 48, ECF No. 1.) She also alleges that Wells Fargo "did not honor the public records as evidence of [her] ownership of the

22

property" and "set to permanently deny [Harris] her property
inheritance." (*Id.* ¶ 48.) Harris states that she "has no way
to know the basis of [Wells Fargo's]" refusal to allow her to
assume the mortgage, but she avers: "Is it a black thing[;] is[]
it a white thing; is it just arbitrary conduct by defendant?
One can never know another's true intent thus circumstances[],
history, and course of dealing [] must inform us and in the
defendant's case it contravened 42 U.S.C. [§] 1981." (*Id.* at ¶
47.) Harris also avers in her statement of the claim: "Is it
the Plaintiff's race and the value of her property as it was
when this law was enacted?" (*Id.* at ¶ 48.) In its motion for
judgment on the pleadings, Wells Fargo argues that Harris has
failed to allege any facts that evidence she was the subject of
any intentional racial discrimination. (Mot. for J. on the
Pleadings 7, ECF No. 51.) Harris's response in opposition fails
to address Wells Fargo's arguments regarding her §§ 1981 and
1982 claims. (Pl.'s Resp., ECF No. 53.)

     Section 1981 provides that:

     All persons within the jurisdiction of the United
     States shall have the same right in every State and
     Territory to make and enforce contracts, to sue, be
     parties, give evidence, and to the full and equal
     benefits of the laws and proceedings for the security
     of persons and property as enjoyed by white citizens,
     and shall be subject to like punishment, pains,
     penalties, taxes, licenses, and exactions of every
     kind, and to no other.

42 U.S.C. § 1981(a). The statute thus "prohibits racial

discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). "The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at § 1981(b).

"Section 1981 prohibits intentional racial discrimination in the making and enforcing of contracts with both public and private actors. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001). To state a *prima facie* claim for relief under 42 U.S.C. § 1981, a plaintiff must allege: (1) that the plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Id.* at 872.

In addition, 42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, hold, and convey real and personal

24

property."  A § 1982 claim, like a claim under § 1981, requires that a plaintiff plead racial animus. *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013).  Put differently, "one must allege intentional racial discrimination." *Id.*

Here, while Harris has pled that she is a member of a protected class, as explained further *supra* in Section II.B.2.a, Harris has failed to plead a class-based discriminatory animus, as required by both §§ 1981 and 1982.  Harris's contentions are nothing more than conclusory allegations of racial discrimination.  Harris's claims that Wells Fargo is engaging in class-based discriminatory animus are wholly rested on alleged past discriminatory actions of Wells Fargo that are "public knowledge," as Harris so pleads, or are related to some unidentified litigation whereby Wells Fargo was purportedly found to be acting in a discriminatory manner.  (Compl. ¶¶ 1, 43; ECF No. 1.)  Harris's hypotheses regarding the reasons for the denial of her attempts to assume and modify the mortgage, without more, are simply not enough to state a claim under either §§ 1981 or 1982.  In addition, Harris neither alleges that similarly situated persons outside of the class were not deprived of services or that she received services in a markedly hostile[7] manner.  Therefore, construed liberally, Harris's

---

[7] At most, Harris alleges that certain representatives of Wells Fargo spent time on the phone with her in a

complaint does not allege a class-based discriminatory animus on the part of Wells Fargo.

Harris's race-based discrimination claims under §§ 1981 and 1982 are conclusory and factually deficient. She has pled no factual allegations sufficient to state a claim against Wells Fargo under §§ 1981 or 1982. Accordingly, it is recommended that Harris's §§ 1981 and 1982 claims be dismissed for failure to state a claim.

　　　3.　Harris's State Claims

　　　　　a.　Supplemental Jurisdiction over Harris's State Law
　　　　　　　Claims

In her complaint, Harris alleges four state law claims: "breach of an unconscionable contract," detrimental reliance, fraudulent misrepresentation, and violations of the Tennessee Consumer Protection Act. (Compl. ¶¶ 49-53, ECF No. 1.) Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that "'[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well.'" *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009)(quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th

---

"passive/aggressive" manner. (Compl. ¶ 40, ECF No. 1.) This hardly the kind of factual scenario that a reasonable person would find objectively discriminatory as would raise a claim for violations of 42 U.S.C. § 1981.

Cir. 2003)).   The court has original jurisdiction only over Harris's claims arising under federal law,[8] and because the court recommends dismissal of those claims, it is further recommended that the court decline to exercise supplemental jurisdiction over Harris's state law claims.

Accordingly, the court recommends that Harris's state law claims be dismissed for lack of subject-matter jurisdiction.  In the alternative and for the reasons set forth below, the court

---

[8]Harris has not met her burden of pleading diversity jurisdiction.  Federal courts are courts of limited jurisdiction and as a result, "'[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'"  *Farmer v. Fisher*, 386 F. App'x 554, 556 (6th Cir. 2020)(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).   "Failure to adequately plead the amount in controversy requirement may be cured by the presence of clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum."  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001)(citation omitted).

Harris's complaint does not indicate that she is seeking to invoke the court's diversity jurisdiction under 28 U.S.C. § 1932.   In fact, she specifically claims to be seeking only federal question jurisdiction.  (Compl. ¶ 3, ECF No. 1.)  Harris alleges that she is a resident of Tennessee and that Wells Fargo's principal place of business is in California.  (*Id.*)  The court notes that Wells Fargo's place of incorporation is in Delaware. While there is complete diversity between the parties, Harris fails to plead the amount in controversy, and she does not present clear allegations that the case involves "a sum well in excess of" $75,000.  (Compl. 22-23, ECF No. 1.) At the time this suit was filed, the outstanding debt on the property was roughly $48,000.  (Compl. ¶ 11, ECF No. 1.)  This is the only amount of damages specified in the complaint.   Therefore, because Harris has failed to meet her burden to plead the amount in controversy, the court does not have diversity jurisdiction over this case.

recommends that each of Harris's state law claims be dismissed
for failure to state a claim upon which relief may be granted.

        b.   "Breach of an Unconscionable Contract"

In her complaint, Harris alleges that Wells Fargo "breached
[its] promise of permanent modification of the mortgage secured
by [her] home." (Compl. ¶ 49, ECF No. 1.) Harris alleges that
even after Harris made her HAMP trial payments for ten months,
Wells Fargo "made clear it was not going to honor the
expectation [of Harris] that induced her performance." (*Id.*)
Harris alleges that representatives of Wells Fargo orally
promised her both cessation of foreclosure and assumption and
modification of Mr. Harris's loan if she probated Mr. Harris's
will. (Compl. ¶ 49, ECF No. 1.) Harris also claims that Wells
Fargo breached said oral contract by failing to modify the loan
after she made trial payments on the mortgage. (*Id.*) Harris
does not plead that any of these conversations were memorialized
in writing. (*See* Compl., ECF No. 1.)

In its motion for judgment on the pleadings, Wells Fargo
argues that Harris lacks standing to enforce Mr. Harris's loan
because she was neither a party nor an intended beneficiary to
the loan and that the Tennessee Statute of Frauds bars Harris's
claim concerning the modification or assumption of the loan.
(Mot. for J. on the Pleadings 10-12, ECF No. 51-1.) Harris's
response in opposition fails to address Wells Fargo's arguments

28

regarding her claim for "breach of an unconscionable contract."
(Pl.'s Resp., ECF No. 53.)

The Tennessee Statute of Frauds bars Harris's claim that
Wells Fargo breached an oral contract for mortgage modification.
Under Tennessee's statute of frauds, Harris cannot bring an
action against Wells Fargo "upon any promise or commitment . . .
to alter, amend, renew, extend or otherwise modify or supplement
any written promise . . . unless the promise or agreement, . . .
or some memorandum or note thereof, shall be in writing and
signed by" Wells Fargo.    Tenn. Code Ann. § 29-2-101(b)(1).
Here, there is no written agreement signed by the parties that
purports to permanently modify the terms of Mr. Harris's
original mortgage agreement.    Although Harris alleges that she
made reduced trial payments from May 2017 through February 2018,
(Compl. ¶ 32, ECF No. 1), she has failed to plead the existence
of a writing signed by Wells Fargo promising to modify the
mortgage at issue.    In addition, although Harris attached
correspondence informing her that she qualified for loan
assistance and would begin trial payments, the attached letter[9]
does not contain any promise from Wells Fargo to permanently
modify the loan.    (Exh. G, ECF No. 1-7.)

---

[9]The attached letter is incomplete.    The only included page
cuts off in the middle of the sentence.    There are not any
subsequent pages attached showing the entirety of the document.
(Exh. G, ECF No. 1-7.)

To the extent that Harris seeks to invoke the theory of promissory estoppel, under Tennessee law, promissory estoppel is not an exception to the statute of frauds. *Nationsbank, N.A. (S.) v. Millington Homes Inv'rs, Ltd.*, No. 02A01-9805-CH-00134, 1999 WL 79204, at *3 (Tenn. Ct. App. Feb. 19, 1999)(citation omitted)("[T]he thrust of the cases is that promissory estoppel is not recognized as an exception to the Statute of Frauds.").

Accordingly, it is recommended that Harris's claim for "breach of an unconscionable contract" be dismissed for failure to state a claim upon which relief may be granted.

### c.    Detrimental Reliance

In her complaint, Harris alleges that she relied to her detriment on Wells Fargo's promises that it would "proceed with the modification of the mortgage when she had a testamentary letter showing her as the administrator or executors of the estate." (Compl. ¶ 52, ECF No. 1.) She asserts that Wells Fargo "did not honor its coercive promise and is now using the fact of the probate to deny modification." (*Id.*) According to Harris, relying on this promise caused her financial hardship. (*Id.* at ¶ 20.) In its motion for judgment on the pleadings, Wells Fargo argues that the alleged promise is "unenforceably vague," that Harris failed to plead acts by Wells Fargo akin to fraud, and that the claim must fail because there exists a valid written contract. (Mot. for J. on the Pleadings 12-13, ECF No.

51-1.)  Harris's response in opposition fails to address Wells
Fargo's arguments regarding her claim for detrimental reliance.
(Pl.'s Resp., ECF No. 53.)

Detrimental reliance is another term for the doctrine of
promissory estoppel in Tennessee.  *Chavez v. Broadway Elec.
Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007).  As
such, Tennessee courts apply the definition of promissory
estoppel found in the Restatement (Second) of Contracts to
detrimental reliance claims, to wit:

> A promise which the promisor should reasonably expect
> to induce action or forbearance of a definite and
> substantial character on the part of the promise and
> which does induce such action or forbearance is
> binding if injustice can be avoided only by
> enforcement of the promise.

*Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982)(quoting
Restatement (Second) of Contracts § 90 (1981)).  Promissory
estoppel is an equitable doctrine, and its limits are defined by
equity and reason.  *Chavez*, 245 S.W.3d at 404 (citing *Alden*, 637
S.W.2d 864 (Tenn. 1982)).  Although the language of the
Restatement second does not expressly limit its application to
gratuitous promises, the section falls under the topic of
"Informal Contracts Without Assent or Consideration."
Restatement (Second) of Contracts § 90 (1981).  Accordingly,
courts apply promissory estoppel to allow a party who has
justifiably relied on a *gratuitous* promise to enforce that

promise despite the lack of consideration. *Alden*, 637 S.W.2d at 864 (emphasis added)(quoting L. Simpson, *Law of Contracts* § 61 (2d ed. 1965)). If the promise is not gratuitous and consideration has been paid in exchange for the promise, it is not necessary to resort to the equitable doctrine of promissory estoppel because the promise would be binding under the law of contracts.

Tennessee courts do not favor the application of promissory estoppel in contract cases because it creates an exception to the statute of frauds and, if applied too liberally, could "swallow the rule." *Johnson v. Allison*, No. M2003-00428-COA-R3-CV, 2004 WL 2266796 at *8 (Tenn. Ct. App. 2004). The Tennessee Supreme Court has limited the application of promissory estoppel to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003)(quoting *Baliles v. Cities Serv.*, 578 S.W.2d 621 (Tenn. 1979)). Here, there are no allegations in the complaint of any conduct on the part of Wells Fargo that verges on actual fraud. "Non-performance of a representation to consider a loan modification does not speak to a party's intentional or reckless conduct." *Pugh v. Bank of America*, No. 13-2020, 2013 WL 3349649, at *13 (W.D. Tenn. July 2, 2013). Therefore, the court finds there are no facts to support a

finding that this is "an exceptional case" where promissory
estoppel should be applied.

Furthermore, a promissory estoppel claim is not dependent
on the finding of an express contract between the parties,
*Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn. Ct.
App. 1997), but the court must first determine whether an
enforceable contract exists. *Calabro v. Calabro*, 15 S.W.3d 873,
879 (Tenn. Ct. App. 1999). As a general matter, however,
promissory estoppel is not a viable theory of recovery when
there is a valid contract. *Jones v. BAC Home Loans Servicing,
LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *9 (Tenn. Ct.
App. July 12, 2017). Although promissory estoppel has been
applied in cases where parties have valid contracts, Tennessee
courts have generally indicated that such cases involved
promises that did not change the terms of the existing
contracts. *Thomas Energy Corp. v. Caterpillar Fin. Servs.
Corp.*, No. E2014-00226-COA-R3-CV, 2014 WL 7366676, at *7 (Tenn.
Ct. App. Dec. 26, 2014). Thus, given a contract, a claim of
promissory estoppel is limited to allegations that a promise
expanded the terms of the existing contract. *Jones*, 2017 WL
2972218, at *9; *Bill Brown Const. Co. v. Glens Falls Ins., Co.*,
818 S.W.2d 1, 9-11 (Tenn. 1991)("In such cases, the promise
alleged was generally made at the time of contracting and
operated to expand, not to add to or vary the terms of the

33

contract.").

In *LeBlanc v. Bank of America, N.A.*, the plaintiff asserted a promissory estoppel claim against a defendant where the defendant told plaintiff that he "would receive a permanent loan modification and that he 'should temporarily stop making payments until [defendant] could calculate the correct payment for the permanent loan modification.'"  No. 2:13-cv-02001-JPM-tmp, 2013 WL 3146829, at *1 (W.D. Tenn. June 18, 2013).  In reliance on that promise, the plaintiff stopped making the payments and thereafter the defendants asserted that the loan was in default and threatened to foreclose. *Id.* at 2.  The court held that the plaintiff's claim of promissory estoppel was barred because the plaintiff was seeking to change the terms of the deed of trust through a permanent loan modification. *Id.* at 25.

Here, like the plaintiff in *LeBlanc*, Harris is attempting to recover under a theory of promissory estoppel, alleging that a representative of Wells Fargo promised that her permanent loan modification if and when she submitted her late husband's will to probate and provided it with "a testamentary letter showing her as the administrator or executor[] of the estate." (Compl. ¶ 52, ECF No. 1.)  Harris alleges that Wells Fargo "did not honor its coercive promise and is now using the fact of the probate to deny modification." (*Id.*)  Harris's promissory

34

estoppel claim seeks to change the terms of an existing, valid contract regarding the mortgage of the property.

Accordingly, it is recommended that Harris's claim for detrimental reliance be dismissed for failure to state a claim upon which relief may be granted.

### d. Fraudulent Misrepresentation

Harris also alleges that Wells Fargo committed fraudulent misrepresentation by leading her to believe that her late husband's mortgage was assumable and then informing her that it was not. (Compl. ¶ 54, ECF No. 1.) Harris asserts, "[i]t is absolutely inconceivable that the defendant did not know the mortgage loan was not assumable before its March 14, 2018 letter if indeed that is the truth." (*Id*.) In its motion for judgment on the pleadings, Wells Fargo argues that Harris's fraudulent misrepresentation claim must fail because she has failed to allege facts with particularity to support this claim. (Mot. for J. on the Pleadings 19, ECF No. 51-1.) Harris's response in opposition fails to address Wells Fargo's arguments regarding her claim for fraudulent misrepresentation. (Pl.'s Resp., ECF No. 53.)

In Tennessee, "'[i]ntentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action." *Hodge v. Craig*, 382 S.W.3d 325, 342-43 (Tenn. 2012)(suggesting that the term "intentional

misrepresentation be used to describe fraud or fraudulent
misrepresentation). Therefore, this court construes Harris's
fraudulent misrepresentation claim as a claim for intentional
misrepresentation.

As indicated in *Hodge*, a plaintiff claiming intentional
misrepresentation must show:

(1) that the defendant made a representation of a present
or past fact;

(2) that the representation was false when it was made;

(3) that the representation involved a material fact;

(4) that the defendant either knew that the representation
was false or did not believe it to be true or that the
defendant made the representation recklessly without
knowing whether it was true;

(5) that the plaintiff did not know that the
representation was false when made and was justified
in relying on the truth of the representation; and

(6) that the plaintiff sustained damages as a result of
the representation.

*Id.* (citing *Walker*, 249 S.W.3d at 311; 8 Tennessee Practice:
Tennessee Pattern Jury Instructions – Civil § 8.36, at 357 (11th
ed. 2011)).

Because a claim for intentional misrepresentation is
construed as a claim for fraud in Tennessee, the heightened
pleading standard Federal Rule of Civil Procedure 9 must be met.
*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923,
931 (6th Cir. 2006). A claim for fraud must be stated with

36

particularity, and "the plaintiff must, at a minimum, allege the
time, place, and content of the misrepresentations; the
defendant's fraudulent intent; the fraudulent scheme; and the
injury resulting from the fraud." *Id.* (citing Fed. R. Civ. P.
9(b)); *see also Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th
Cir. 1993). The purpose of these requirements is to allow a
court to dispose of abusive litigation filed as a fishing
expedition, to protect defendants from unsupported attacks on
their reputation, and to ensure the defendant has notice of the
specific conduct the plaintiff charges as fraud in order to
allow him to formulate a defense. *U.S. ex rel. Marlar v. BWXT
Y-12, LLC*, 525 F.3d 439, 444 (6th Cir. 2008). A court must
consider the particularity requirement of Rule 9(b) alongside
the "policy of simplicity in pleading" found in Rule 8 of the
Federal Rules of Civil Procedure, which requires a "short and
plain statement of the claim" and "simple, concise, and direct"
allegations. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848
F.2d 674, 679 (6th Cir. 1988). The requirements of Rule 9(b)
are met where the defendant has fair notice of the charges
against him as long as they amount to more than mere assertions
and unsupported conclusions. *In re Reciprocal of America (ROA)
Sales Litig.*, No. 04-2078, 2007 WL 2900286, at *6 (W.D. Tenn.
Sept. 28, 2007).

"The essence of fraud is deception." *Deal v. Tatum*, No.

M2015-01078-COA-R3-CV, 2016 WL 373265, at *7 (Tenn. Ct. App. Jan. 29, 2016)(citing *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005)). "In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted." *Id.* "Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage." *Id.* (citing *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001).

Here, Harris's complaint fails to allege a claim for intentional misrepresentation with the requisite particularity. The complaint alleges that, in December of 2015, an agent of Wells Fargo "stated that the only way she would stop the foreclosure sale was if [Harris] would probate [her late husband's] will and receive a testamentary letter at which time they would modify the loan." (Compl. ¶ 19, ECF No. 1.) Harris claims that this was an intentional misrepresentation because "it is absolutely inconceivable that [Wells Fargo] did not know the mortgage loan was not assumable before its March 14, 2018 letter . . . ." (*Id.* at ¶ 54.)

The complaint contains no particular allegations showing that this representative acted with knowledge of falsity of the representations about the mortgage or with the intent to deceive

38

Harris.  In fact, Harris acknowledges that she has not met the
particular pleading standard of Rule 9 by failing to plead any
intentional or knowing false representation by Wells Fargo:
"[t]he new element of knowledge may not had (sic) been addressed
in Plaintiff's affirmative facts.  However, knowledge has to be
implied by the bare nature of their business and the environment
that this particular Defendant operates." (*Id.*)

Moreover, Harris appears to acknowledge that she has failed
to plead even reckless conduct by Wells Fargo.  She states:

> [m]aybe [i]f it is the truth [that Wells Fargo did not
> know that the mortgage loan was not assumable], had
> the defendant answered the many questions plaintiff
> has asked through her association with it, it would
> have come to that conclusion much earlier sparring
> (sic) plaintiff a lot of grief, needed resources[,]
> and she would not be 60 coming out of a bankruptcy.

(*Id.*)  At most, Harris pleads negligent conduct by a Wells Fargo
representative in failing to recognize that its alleged promise
was or may have been false.  She pleads no facts to suggest that
the conduct by Wells Fargo rises to the level of recklessness,
knowing, or intentional false representations.

Harris's complaint contains only legal labels and a
perfunctory recitation of some elements of the claim.
Therefore, Harris has not pled her claim for fraudulent
misrepresentation with sufficient particularity.  Accordingly,
it is recommended that Harris's claim for fraudulent
misrepresentation be dismissed for failure to state a claim upon

which relief may be granted.

        e.   Violations of the Tennessee Consumer Protection
           Act

The Tennessee Consumer Protection Act ("TCPA") prohibits any "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104. The purpose of the TCPA is "to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts and practices." *Stooksbury v. American Nat'l Prop. & Cas. Co.*, 126 S.W.3d 505, 520 (Tenn. Ct. App. 2003). Fifty-two specific "unfair or deceptive acts or practices" are listed therein. *Id.* at § 47-18-104(b)(1)-(52).[10]

Harris alleges that Wells Fargo's actions were unfair or deceptive within the meaning of the TCPA. (Compl. ¶ 53, ECF No. 1.) Among the acts Harris identifies are: (1) refusing to answer written questions about the basis for denial or closing of five separate HAMP applications, (2) routinely demanding

_____

[10]Here, Harris cites to three specific subsections: (1) representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law, *Id.* at § 47-18-104(b)(12); (2) causing confusion or misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a consumer transaction, *Id.* at § 47-18-104(b)(14); and (3) engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and director of the division, *Id.* at § 47-18-104(b)(27). (*See* Compl. ¶ 53, ECF No. 1.)

documents Harris had already submitted, (3) failing to answer
questions about the basis for refusing to recognize Harris as
the owner of the property, (4) coercing Harris into an expensive
probate proceeding, and, (5) refusing to modify the debt even
after Harris submitted her husband's will to probate in order to
prevent a foreclosure sale. (*Id.* at ¶ 53.) In its motion for
judgment on the pleadings, Wells Fargo argues that Harris's TCPA
claims must fail because "Wells Fargo's actions in servicing of
the loan do not fall under the purview of the TCPA." (Mot. for
J. on the Pleadings 17, ECF No. 51-1.) Harris's response in
opposition fails to address Wells Fargo's arguments regarding
her claims under the TCPA. (Pl.'s Resp., ECF No. 53.)

Courts in Tennessee have consistently held that a lender's
actions for foreclosure and debt-collection, even when pursuing
loan modification, are not covered under the TCPA. *See Pursell
v. First Am. Nat'l Bank*, 937 S.W.2d 838, 841-42 (Tenn.
1996)(holding that a lender's repossession of collateral
securing a defaulted loan is not actionable under the TCPA); *see
also*, *Pugh v. Bank of America*, No. 13-2020, 2013 WL 3349649, at
*7 (W.D. Tenn. July 2, 2013)(holding that where "the gravamen of
Plaintiffs' allegation is that foreclosing the Property would be
improper because of representations made during a series of
events that led to denial of Plaintiffs' request for a loan
modification," "[t]hese events occurred in the context of a

41

dispute that is effectively a 'dispute over repossession of the collateral securing [a] loan," and therefore the TCPA does not apply)(citations omitted); *Peoples Bank of Am.*, No. 11-2863-STA, 2012 WL 601777, *8 (W.D. Tenn. Feb. 22, 2012)(holding that lender's negotiation of a mortgage modification while simultaneously pursuing foreclosure was not actionable under the TCPA); *Vaughter v. BAC Home Loans Servicing, LP*, No. 3:11-cv-00776, 2012 WL 162398, *5-6 (M.D. Tenn. Jan. 19, 2012)(deciding that the TCPA did not apply to defendant's allegedly deceptive acts during loan modifications negotiations and home foreclosure); *Hunter v. Washington Mut. Bank*, No. 2:08-cv-069, 2008 WL 4206604, *5-6 (E.D. Tenn. Sept. 10, 2008)(dismissing TCPA claim based on bank's attempts to collect from a delinquent borrower)).

Harris's complaint makes clear that this dispute arises from and addresses a mortgage transaction and the assumption and modification of said mortgage. (*See*, Compl. ECF No. 1.) The gravamen of Harris's allegations is that foreclosing on the property is improper because Wells Fargo made representations about her ability to modify the mortgage, which eventually was denied despite the representations. Those events occurred in the context of a mortgage dispute that is effectively a "dispute over repossession of the collateral securing [a] loan." *Pursell*, 937 S.W.2d at 842. "[W]hen a debtor defaults on a

42

mortgage payment, and the mortgage holder forecloses upon the collateral that secured the loan (in this case, the Property), the TCPA does not apply." *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-cv-501, 2010 WL 3429666 (E.D. Tenn. Aug. 27, 2010).

Nor do Harris's allegations related to the terms of Wells Fargo's loan modification offers state a claim under the TCPA. The TCPA expressly excludes four areas from its coverage, one of which deals with credit transactions. The TCPA states:

(a)  The provisions of this part shall not apply to:

(3)  Credit terms of a transaction which may be otherwise subject to the provisions of this part, except insofar as the Tennessee Equal Consumer Credit Act of 1974, compiled in part 8 of this chapter may be applicable.

Tenn. Code Ann. § 47-18-111(a)(3). Because Wells Fargo's loan modification offers relates to the terms of its extension of credit to Harris, they fall outside the reach of the TCPA.

Therefore, the TCPA does not apply to Harris's claim that Wells Fargo engaged in unfair or deceptive practices with regard to Wells Fargo's attempted foreclosure of the property or to Harris's attempts to modify and assume the mortgage. Accordingly, it is recommended that Harris's claim for violations of the Tennessee Consumer Protection Act be dismissed for failure to state a claim upon which relief may be granted.

Under her claim for violations of the TCPA, Harris also asserts that Wells Fargo violated the Tennessee Residential

Lending, Brokerage and Servicing Act, Tenn. Code Ann. § 45-13-401, by committing four "prohibited acts and practices," enumerated in Tenn. Code Ann. § 45-13-401(1), (5), (7)-(8). Here, however, Harris cannot sustain this claim because the Act vests enforcement powers under this Act to a regulatory body – the Tennessee Commissioner of the Department of Financial Institutions – and the statute does not provide for a private cause of action. Tenn. Code Ann. § 45-13-405. "[F]or legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right." Tenn. Code Ann. § 1-3-119(a). In the absence of such express language, "no court of this state, licensing board, or administrative agency shall construe or interpret a statute to impliedly create or confer a private right of action except as otherwise provided in this section." Tenn. Code Ann. § 1-3-119(b). Therefore, Harris's claim under the Tennessee Residential Lending, Brokerage and Servicing Act must fail as well and it is recommended that the court dismiss it for failure to state a claim upon which relief may be granted.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Harris's complaint be dismissed *sua sponte* in its entirety for lack of standing. In the alternative, it is recommended that Wells

44

Fargo's motion for judgment on the pleadings be granted.


Respectfully submitted this 18th day of March, 2019.


s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this
report and recommended disposition, a party may serve and file
written objections to the proposed findings and recommendations.
A party may respond to another party's objections within
fourteen (14) days after being served with a copy. Fed. R. Civ.
P. 72(b)(2). Failure to file objections within fourteen (14)
days may constitute a waiver of objections, exceptions, and
further appeal.